UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAUL GAMBOA,

    Plaintiff,

v.                                             Case No. 1:17-cv-333

                                               Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB).[1]

Plaintiff alleged a disability onset date of October 1, 2014. PageID.215. Plaintiff identified his disabling conditions as: diabetes; numbness/tingling in the left foot; multiple herniated discs in the lumbar spine; bulging disc in the lumbar spine; pain in the lumbar spine; radiculopathy in the lumbar spine; radiating pain down the right leg; unable to sit/stand/walk for extended periods of time; difficulty sleeping/fatigue; and sleep apnea/urgency to urinate. PageID.218. Prior to applying for DIB, plaintiff completed one year of college and specialized vocational training in refrigeration, and had past employment as a collector for waste management service, carpenter in the National Guard, and human resource technician (personnel clerk). PageID.89, 219-220. An Administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and

---

[1] The Court notes that plaintiff is also referred to as "Saulo Pat" and "Saul Santiago Gamboa" in medical records. *See* PageID.275, 338.

1

entered a written decision denying benefits on November 3, 2016. PageID.39-54. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

I.  **LEGAL STANDARD**

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can

2

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's claim failed at the fourth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of

October 1, 2014, and meets the insured status requirements of the Social Security Act through September 30, 2020. PageID.41.

At the second step, the ALJ found that plaintiff had severe impairments of: degenerative disc disease of the cervical spine with small disc protrusions at C4-5 and C6-7; mild lower lumbar spine facet osteoarthritis with disc protrusion at L2-3; obesity; and sleep apnea. PageID.41. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.43.

The ALJ decided at the fourth step that:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). That is, the claimant can lift and/or carry ten pounds frequently and up to twenty pounds occasionally. The claimant can sit for up to six hours, but he can only stand and/or walk for up to four hours in an eight-hour workday. The claimant can occasionally balance, stoop, crouch, and climb ramps and stairs, but he cannot kneel, crawl, or climb ladders, ropes, or scaffolds. The claimant also cannot operate leg or foot controls with either lower extremity. Additionally, the claimant can have no more than occasional exposure to temperature extremes, humidity, vibration, and workplace hazards, including unprotected heights and dangerous moving machinery.

PageID.43-44.

The ALJ also found at the fourth step that plaintiff is capable of performing past relevant work as a personnel clerk and as a security guard, and that this work does not require the performance of work-related activities precluded by plaintiff's residual functional capacity (RFC). *Id.* at PageID.52.

Although unnecessary, the ALJ proceeded to the fifth step, where he determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.53-54. Specifically, the ALJ found that plaintiff could perform the requirements of light and unskilled occupations in the national economy such as office helper

(180,000 jobs), packager (170,000 jobs), and assembler (50,000 jobs). PageID.53. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from October 1, 2014 (the alleged onset date) through November 3, 2016 (the date of the decision). PageID.53-54.

### III. DISCUSSION

Plaintiff set forth two issues on appeal:

**A. The ALJ failed to comply with the requirements of SSR 06-03p by not considering evidence of the plaintiff's individual unemployability due to his service connected disabilities**

Plaintiff contends that the ALJ failed to consider and evaluate a disability decision issued by the Veterans Administration (VA). Plaintiff does not address the VA determination in any detail or how it differs from plaintiff's RFC. The ALJ addressed plaintiff's service connected disability as follows:

> The undersigned also recognizes that the claimant has been assigned a VA service-connected disability rating of 90% (See Ex. 2F; 3F; 16F). Based on this rating, the VA has determined that the claimant has "individual unemployability at the 100% rate effective October 8, 2014 because (he is) unable to work due to (his) service-connected disabilities" (Ex. 1D).
>
> While the disability determinations of other governmental agencies are entitled to consideration, they are not based on Social Security Administration policy or definitions of disability, and thus are not binding on the Social Security Administration or entitled to any particular weight in determining disability for Social Security purposes (SSR 06-3p). Furthermore, statements that a claimant is "disabled" or "unable to work," or the like, are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein. Such issues are reserved to the Commissioner, who cannot abdicate the statutory responsibility to determine the ultimate issue of disability. Opinions on issue reserved to the Commissioner can never be entitled to controlling weight, but must be carefully considered to dete1mine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence (SSR 96-5p). The undersigned gives little weight to the VA's finding because it is inconsistent with the medical evidence and the record as a whole, including the comparatively mild objective medical studies, the claimant's history of improvement with treatment, and the claimant's reported

5

> activities of daily living. Moreover, the VA's finding is not stated in function-by-function terms and does not precisely explain the exact limitations that would preclude the claimant from engaging in all possible work activity, which renders it even less persuasive.

PageID.51 (emphasis added).

The ALJ was not bound to accept the disability ratings made by the VA. The regulations at 20 C.F.R. § 404.1504 provide in pertinent part that:

> A decision by any nongovernmental agency any other governmental agency about whether you are disabled or blind is based upon its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

A "VA determination of total disability is 'only one factor to be considered in making a social security disability finding.' " *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508 (6th Cir. 2013). While a VA disability rating is not binding on the ALJ, it is entitled to some weight. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) ("[a] VA rating of total and permanent disability is not legally binding on the Commissioner because the criteria applied by the two agencies is different, but it is evidence that is entitled to a certain amount of weight and must be considered by the ALJ"). Here, the ALJ considered the VA rating and gave it some weight consistent with the regulations. Accordingly, plaintiff's claim of error will be denied.

> **B. The ALJ's Step 3 determination is improper and not supported by substantial evidence.**

Plaintiff contends that his condition meets the requirements of Listing 1.04A, which provides as follows:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

6

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

Plaintiff contends that the ALJ failed to articulate reasons for failing to find that his impairments met the requirements of Listing 1.04A, *Disorders of the spine*. Plaintiff's Brief (ECF No. 11, PageID.11, PageID.1431). A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id*. An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 404.1525(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987). *See, e.g., Thacker v. Social Security Administration*, 93 Fed. Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. § 404.1520(d).

Any error in an ALJ's step three analysis is harmless unless the claimant has not shown that his impairments met or medically equaled in severity a listed impairment. *Forrest v.*

7

*Commissioner of Social Security*, 591 Fed. Appx. 359, 366 (6th Cir. 2014). *See, e.g., Allen v. Commissioner of Social Security*, No. 1:16-cv-170, 2016 WL 6471092 at *3 (W.D. Mich. Nov. 2, 2016) ("the Sixth Circuit recognizes that any error with respect to the ALJ's step three analysis is harmless unless the claimant can establish that she satisfied the listing in question").

Here, plaintiff contends that he met the first requirement of Listing 1.04A because he reported to examining physician R. Scott Lazzara, M.D., that he had "persistent symptoms of low back pain with radiation of pain and numbness down his left leg and into his foot" and that this was evidence of neuroanatomic distribution of pain. Plaintiff's Brief at PageID.1434. Plaintiff stated that he met the second requirement, limitation of motion of the spine, as demonstrated by the diminished range of motion in his dorsolumbar spine on examination. *Id*. Plaintiff stated that he met the third requirement, "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back," because the doctor's objective findings included "tenderness over the left facet joints, decrease motor strength, diminished reflexes in the left lower extremity, and diminished sensation at the L3-S1 dermatome of the left lower extremity." *Id*. Next, plaintiff stated that he met the fourth requirement because Dr. Lazzara found evidence of positive left-sided straight leg testing. *Id*. Finally, plaintiff noted additional support for his claim from the January 2012 MRIs of the cervical and lumbar spine which documented disc protrusions at C4-C5 and C6-C7, and degenerative disc disease at L2-L3 with a broad-based disc protrusion resulting in L2 nerve root impingement. PageID.300-301.

The ALJ addressed Listing 1.04A as follows:

> The undersigned examined and considered all listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 with specific attention to listings 1.04 (Disorders of the Spine) and 3.00 (Respiratory Disorders). The undersigned notes that the medical consultants for the State Disability Determination Service ("State DDS")

> disposed of this case after assessing the claimant's residual functional capacity, which meant no listing was met or equaled, in their opinion.
>
> The claimant's degenerative disc disease of the cervical spine with small disc protrusions at C4-5 and C6-7 and mild lower lumbar spine facet osteoarthritis with disc protrusion at L2-3 failed to meet the requirements for listing 1.04 (Disorders of the Spine), because the record, consistent with the findings below, does not demonstrate compromise of a nerve root (including the cauda equine) or the spinal cord with (A) evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and positive straight leg-raise testing; (B) spinal arachnoiditis; or (C) lumbar spinal stenosis resulting in pseudoclaudication.

PageID.43.

The ALJ's determination that plaintiff did not meet the requirements of Listing 1.04A is supported by substantial evidence. As an initial matter, plaintiff's discussion of the January 2012 MRI for the lumbar spine is not accurate. This MRI did not establish L2 nerve root impingement; rather, the MRI report noted that "[t]here is a small far lateral to the right disc protrusion which *may* impinge upon the exiting L2 nerve root", with the impression that "[t]his *appears* to result in some mild L2 nerve root impingement." PageID.300-302 (emphasis added). The ALJ noted that a repeat MRI of the lumbar spine on June 22, 2012 indicated that while plaintiff had early degenerative disk changes at L2-3, "[t]here is no disk protrusion, canal stenosis or neural impingement." PageID.45, 299. In addition, electrodiagnostic testing on June 27, 2012, indicated a normal nerve conduction study, with no findings consistent with peripheral neuropathy or mononeuropathy in the right lower extremity. PageID.45, 333. The ALJ also noted that while Dr. Lazzara concluded that plaintiff appeared to have "moderate degeneration," the doctor ultimately concluded that "there were no radicular symptoms." PageID.45, 878. Accordingly, plaintiff's claim of error will be denied.

## IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: September 18, 2018　　　　　　　　　　　　/s/ Ray Kent
　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge